# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3309

KIM M. INDORANTO,

*Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

———————

**Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:02-CV-9—Theresa L. Springmann,** *Judge.*[1]

———————

ARGUED FEBRUARY 19, 2004—DECIDED JUNE 29, 2004

———————

Before CUDAHY, POSNER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Kim Indoranto, a former home care nurse, injured her back and neck in an automobile accident. She applied for disability insurance benefits. An administrative law judge ("ALJ") denied her application, determining that although she had a severe impairment,

———————

[1] At the time she decided this case, Judge Springmann was a magistrate judge sitting by consent of the parties. *See* 28 U.S.C. § 636(c).

she retained the residual functional capacity to do sedentary work. The district court affirmed the agency's determination, and Indoranto appeals. We reverse and remand for further proceedings.

In October 1998, Indoranto, then 32 years old, was driving to a patient's home when another motorist struck her car from behind. A few days after the accident she visited her physician, complaining of constant headaches, dull pain in both ears and at the top and back of her head, pain in her back and down her shoulders, and a warm sensation in her leg and foot. The doctor diagnosed her with cervical strain and a cerebral concussion. Over the course of several months she saw other doctors who diagnosed her with a variety of ailments, including herniated discs; straightening of the cervical spine; a bone spur; a disease of the spinal cord and nerve roots; and a previously undetected congenital brain stem abnormality called Arnold-Chiari malformation, in which the cerebellum protrudes into the spinal canal. She continued to experience severe pain in her neck and back, muscle spasms, headaches, and blurred vision. She received a variety of treatments including pain medications, massages, physical therapy, steroid injections, and ultimately surgery. At the advice of her doctors she stopped working and was also prescribed a handicap sticker for her car. She was later evaluated by a psychologist, who diagnosed her with depression. Doctors also became concerned about her heavy use of pain medication.

Indoranto applied for disability insurance benefits, alleging that she became disabled in January 1999, the date doctors advised her to stop working. At a hearing before an ALJ, Indoranto testified that she had experienced only minimal improvement as a result of her surgery, and that she continued to suffer from muscle spasms, pain in her neck and back, difficulties in concentrating, severe headaches, and blurred vision. She also testified that her daily activities had been dramatically curtailed because of her

impairments: her pain required her to change positions from sitting to standing or lying down every 15 to 30 minutes; she could no longer do household chores except for occasional cooking; she rarely left the house or drove; she could walk a block or two at the most before losing her balance and falling; and she could stand for only 10-15 minutes, sit for half an hour, and lift up to 10-15 pounds before feeling discomfort.

The ALJ called on a vocational expert ("VE") to testify about the work abilities of a hypothetical person of Indoranto's age, education-level, work experience, and physical condition. Specifically, the ALJ asked the VE a series of five questions about a person who was limited in lifting, twisting, bending, and also required a position with low levels of concentration due to the effects of pain and medication. The VE testified that for someone with these work restrictions, there were 3,500 cashier jobs, 3,500 hand-packer jobs, and 3,000 mechanical assembler jobs available in the region.

The ALJ subsequently issued a written decision denying Indoranto's claim for benefits. Based on the VE's testimony, the ALJ concluded that although Indoranto could not perform her past relevant work, she retained the ability to perform certain sedentary jobs, including approximately 10,000 jobs that existed in the Chicago metropolitan area. He did not find her complaints of pain fully credible, disbelieving in particular Indoranto's testimony that her pain required her to lie down and take up to three hot baths during the day. The Appeals Council denied Indoranto's appeal. The district court concluded that the ALJ's decision was supported by substantial evidence and affirmed the agency's determination in all respects. This appeal followed.

Where, as here, the Appeals Council denies review, the ALJ's determination becomes the agency's final decision. 20 C.F.R. § 404.981. We will affirm the agency's decision if it

is supported by substantial evidence. 42 U.S.C. § 405(g); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

We turn first to Indoranto's strongest argument—that the ALJ failed to consider all her impairments in concluding that she could still perform sedentary work. Indoranto asserts that the ALJ's questions to the VE did not incorporate the limitations imposed by her daily headaches and blurred vision, and that, contrary to the ALJ's conclusion, her combined impairments prevent her from performing the jobs suggested by the expert. The Commissioner counters that Indoranto improperly relies on medical evidence submitted for the first time to the Appeals Council. Although the Commissioner is correct that the ALJ cannot be faulted for failing to consider evidence that was not presented to him, *see Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994), the record shows that the ALJ had before him evidence pertaining to Indoranto's headaches and blurred vision. Indoranto testified at her hearing that she suffered from "chronic severe headaches every day" that were accompanied by daily episodes of blurred vision, lasting anywhere from a few minutes to an entire day. The record also contains a report from Dr. Cybulski, a neurosurgeon, who opined that the Arnold-Chiari malformation had become symptomatic because of the car accident, and noted that Indoranto complained of headaches and blurred vision. A doctor who examined and evaluated Indoranto for the Social Security Administration also noted that she complained of headaches associated with episodes of blurred vision, and other doctors noted the presence of the Arnold-Chiari malformation.

Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected.

*Kasarsky*, 335 F.3d at 543; *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). Notably absent from the ALJ's order is a discussion of how Indoranto's headaches and blurred vision affected her ability to work. The ALJ also failed to include headaches or blurred vision in the list of work-related impairments submitted to the VE. If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Young*, 362 F.3d at 1003; *Kasarsky*, 335 F.3d at 543; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The Commissioner argues that although the ALJ did not mention headaches or blurred vision to the VE, he nonetheless incorporated these impairments into his questions by instructing the VE to include only those jobs that allowed for a low level of concentration. But concentration is not the same thing as vision, and one wonders how someone with daily episodes of blurred vision could perform the jobs suggested by the VE, such as a cashier or an assembler, which would require attention to visual detail. Further proceedings are necessary so that the ALJ can give full consideration to all of Indoranto's documented impairments in evaluating her claim.

Indoranto also challenges the ALJ's determination that her complaints of pain were not fully credible, arguing that the ALJ gave only "negligible explanations" for discrediting her testimony. Specifically, the ALJ disbelieved her claim that she lies down and takes up to three hot baths a day to alleviate her pain and muscle spasms. The ALJ rejected this testimony, stating only that "there is no clinical support for this extreme limitation in the record." We review the ALJ's credibility determination deferentially but when, as here, the determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford*

*v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In assessing a claimant's credibility, the ALJ must consider subjective complaints of pain if the claimant can establish a medically determined impairment that could reasonably be expected to produce the pain. *See* 20 C.F.R. § 404.1529; Social Security Regulation 96-7p; *Clifford*, 227 F.3d at 871. Further, the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence. *Clifford*, 227 F.3d at 871.

The ALJ's rationale for not crediting Indoranto is not supported by substantial evidence. The record is replete with evidence of the severe pain Indoranto was suffering as a result of herniated discs and numerous other ailments. She testified in detail about how her pain severely limited her daily activities, and there is nothing incredible or inconsistent about her statements that she lies down and takes baths during the day to alleviate her pain. Indoranto never stated that her doctors told her to lie down or take baths, merely that these home remedies helped her feel better. And indeed, the record shows that her physical therapist instructed her to take 30-minute hot baths for pain relief. The ALJ's adverse credibility finding is particularly puzzling in light of his recognition that Indoranto experiences "significant pain and discomfort" because of her impairments. We cannot uphold the ALJ's decision when it is premised on flawed logic. *See Carradine v. Barnhart*, 360 F.3d 751, 754-56 (7th Cir. 2004) (reversing where ALJ's credibility determination was based on "serious errors in reasoning").

Because we remand for a new hearing, we do not reach Indoranto's argument that the Appeals Council erred in rejecting her request for review. We REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*