UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued July 12, 2006
Decided July 26, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-3461

| | |
|---|---|
| SHARON A. TAYLOR, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| JO ANNE B. BARNHART, | No. 04 C 952 |
| *Defendant-Appellee.* | |
| | John Daniel Tinder, *Judge.* |

**O R D E R**

Sharon Taylor appeals the order of the district court upholding the Social Security Administration's ("SSA") denial of her application for disability insurance benefits. More specifically, Ms. Taylor challenges the ALJ's determination that she was not fully credible with respect to disabling pain; that her joint, spinal and mental problems did not constitute listed impairments; and that she was capable of performing sedentary work. For the reasons set forth below, we affirm the judgment of the district court as to Ms. Taylor's credibility, her mental disorders, and her assertions of disabling pain, but we vacate and remand for further

proceedings as to Ms. Taylor's joint (specifically, knee) and spinal ailments and her ability to perform sedentary work.

# I
# BACKGROUND

## A. Historical Facts

At the time of her administrative hearing in September 2003, Ms. Taylor was 65 years old and not employed. She previously had worked for the City of Indianapolis as a receptionist from 1981 to 1989, and then again, after the death of her husband, from 1993 to 1998. She performed temporary clerical work in 1999 and early 2000. In 2002 she worked as a telephone solicitor at a blood bank but was discharged after nine months because she was unable to meet performance quotas. In July 2000, Ms. Taylor applied for disability benefits, asserting that she suffers from the following medical problems and limitations, which rendered her disabled as of May 1998.

Shoulder Problems. In 1995, Dr. Thomas Trainer diagnosed Ms. Taylor with degenerative arthritis of the shoulder joints and marked deterioration of the rotator cuffs. After an automobile accident earlier that year, she reported pain and restricted motion in both shoulders, neck and arm pain radiating into the head and numbness and tingling into the hands, necessitating several months of physical therapy. In January 1996, Dr. Trainer performed surgery to repair Ms. Taylor's left rotator cuff. Ms. Taylor reported "minimal pain" five weeks after surgery. Admin. R. at 183. Fourteen months post-surgery, Dr. Trainer concluded that Ms. Taylor was "doing fairly well" and, despite some "obvious limitation" in the left shoulder, she was able to raise her arm to 90 degrees and sustain it well. Admin. R. at 178.

Spinal Problems. Ms. Taylor also has lower back pain radiating into her hips and legs dating back to approximately 1992. In 2000 she was diagnosed with spinal stenosis at L3-4 and L4-5, as well as degenerative disc and facet disease. Before then, Dr. John Arbuckle administered occasional lumbar steroid epidural injections to manage the pain. Although earlier injections gave her good pain relief, she asserts that the injections in 2000 were not effective. When he examined her in 2000, Dr. Thomas Leipzig described Ms. Taylor's back and leg pain as "relatively incapacitating." Admin. R. at 227. Therefore, in August 2000, Dr. Leipzig and Dr. Peter Hall performed back surgery. Three months later, Ms. Taylor's primary care physician noted that although Ms. Taylor was "getting better," she complained of right back pain and experienced difficulty performing routine tasks. Admin. R. at 326. In September 2002, more than two years after the surgery, Dr. Robert Huler

noted that Ms. Taylor exhibited a mildly positive straight leg raise sign bilaterally. To manage her pain, Ms. Taylor took various narcotic painkillers over several years, although at the time of the hearing she was taking only Aleve.

Knee Arthritis.  In May 2001, Dr. Philip Ireland diagnosed Ms. Taylor with severe osteoarthritis in her knees, found her right knee range of motion limited to 10-95 degrees, and recommended that bilateral total knee replacements be performed "post haste." Admin. R. at 376.  In August 2002, Dr. Trainer diagnosed Ms. Taylor with "moderate to marked valgus" (abnormal outward turning of a bone) in the right knee, found that her severe osteoarthritis of the knees may be aggravating her back condition, and agreed that she needs a total knee replacement.  Admin. R. at 377.  The following month, Dr. Huler noted that Ms. Taylor walks with a cane, has severe osteoarthritis of the right knee with a subluxed (dislocated) knee joint, and exhibited a diminished Achilles deep tendon reflex bilaterally.  At the time of the hearing, the knee surgery had not yet been scheduled because, Ms. Taylor contends, she did not have insurance.

Carpal Tunnel Syndrome.  In May 2001, Dr. Hill Hastings performed surgery to treat severe carpal tunnel syndrome in Ms. Taylor's left hand.  In October 2001, Dr. Yongsun Ra-Hurka concluded that the results of the surgery were "fairly good," however Ms. Taylor still was limited in her ability to "use[] her hands adequately to be able to hold a meaningful job." Admin. R. at 328.  In addition, in September 2002 Dr. Huler diagnosed her with hypertrophic osteoarthritis of the hands.  At her hearing, Ms. Taylor testified that she has no feeling in two fingers, and that she continues to experience pain and difficulty performing routine tasks, such as picking up coins or unlocking a door.

Mental Disorders.  In May 2000, shortly before her back surgery, Ms. Taylor suffered a subdural hematoma of the brain after hitting her head.  In June 2000, Dr. Leipzig surgically removed the clot.  The brain surgery was successful, although Ms. Taylor complained of some speech difficulty and mild disorientation one month later.  Several weeks after surgery Dr. Leipzig stated that Ms. Taylor would be unable to work for at least three months, and possibly longer.

In August 2000, Ms. Taylor complained of memory problems and exhibited some speech problems.  In late 2000, psychologist Howard Wooden diagnosed her with mild memory problems and mild depression and anxiety concerning her health and ongoing pain.  Also in late 2000, a psychiatric evaluation by the SSA concluded that Ms. Taylor's mental impairments were not severe, that her functional limitations were mild and that any memory difficulties were likely the result of stress over her marital separation and financial problems.

In January 2001, Dr. William Wiseman likewise concluded that Ms. Taylor's sadness and lack of motivation stem not from "simple major depression" but rather from her social situation, chronic pain, and financial problems. Admin. R. at 375. In May 2001, internist Dr. Ra-Hurka made the confusing finding that Ms. Taylor suffers from "mild but significant" short-term memory problems. Admin. R. at 325. At her hearing in 2003, Ms. Taylor testified that she continues to experience difficulty with short-term memory.

## B. Administrative and District Court Proceedings

At her administrative hearing in September 2003, Ms. Taylor testified that she is in constant pain when sitting, can stand for no more than five minutes at a time, can walk less than half a block, and can lift no more than five pounds. Two medical experts for the SSA, internist L.K. Stump and orthopedic surgeon Richard Hutson, reviewed Ms. Taylor's medical records but did not examine her. At the hearing, Dr. Stump opined that Ms. Taylor did not meet or equal any listed impairments and that she "[p]robably really [has] no functional impairments." Admin. R. at 466. Dr. Hutson also testified that Ms. Taylor did not meet or equal any listed impairments. However, due to her multiple orthopedic problems, he "would absolutely limit her to sedentary work only," and he further concluded that she might need the option to move between sitting and standing every few minutes. Admin. R. at 472.

Vocational expert Michael Blankenship testified that a person who has the limitations identified by both Dr. Hutson--namely the need to remain sedentary and to sit/stand every few minutes--and the limitations identified by Ms. Taylor--namely lifting no more than five pounds, standing for no more than five minutes and walking no more than half a block--could perform the sedentary work that Ms. Taylor previously performed as a receptionist and telephone solicitor. But on cross-examination, Blankenship conceded that someone could not perform sedentary work if she was limited to sitting for only five minutes. He also stated that all the sedentary jobs he identified require "frequent, if not constant" use of the hands. Admin. R. at 482. In addition, he testified that someone with short-term memory impairments that prevent her from remembering or following instructions would be unable to perform her prior jobs or any other job.

The ALJ concluded that Ms. Taylor is not disabled by her carpal tunnel syndrome, shoulder problems, subdural hematoma and subsequent brain surgery, or other mental problems because none of these impairments, either alone or in combination, are severe. The ALJ did find, however, that her spinal problems and her osteoarthritis of the knees are both severe because they significantly limit her

ability to perform work-related activities. But he concluded that she retained the residual functional capacity to perform sedentary work "provided that she would be allowed alternately to sit and stand at her work station every thirty minutes for two to three minutes at a time," Admin. R. at 25-26, and therefore the ALJ found Ms. Taylor not disabled. In reaching these findings, the ALJ also determined that Ms. Taylor was "not entirely credible" concerning her assertion of totally disabling pain because the record evidence and her own testimony indicated that she is able to work and perform activities of daily living. Admin. R. at 25. The SSA's Appeals Council denied Ms. Taylor's request to review the ALJ's determination.

Ms. Taylor therefore filed this action in the district court, seeking judicial review of the ALJ's determination pursuant to 42 U.S.C. § 405(g). The parties were ordered to submit briefs, Ms. Taylor in support of her complaint and the Commissioner in support of her determination. Following oral argument, the district court concluded that there was substantial evidence supporting the ALJ's determination that Ms. Taylor was less than fully credible, did not meet or exceed a listed impairment, and had the residual functional capacity to perform her past work. Accordingly, the district court affirmed the Commissioner's decision that Ms. Taylor is not entitled to disability benefits under the Social Security Act.

## II

## DISCUSSION

We shall uphold the ALJ's determination, as adopted as it has been here by the Commissioner, if it is supported by substantial evidence. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and adequately discusses the issues. *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). Findings supported by substantial evidence are conclusive and we shall not substitute our judgment for that of the ALJ. *Id.*

### A. Evaluation of the Medical Evidence

On appeal Ms. Taylor contends that the ALJ failed to discuss evidence demonstrating that her ailments constituted listed impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A (major dysfunction of a joint), § 1.04A (disorders of the spine), and § 12.02 (organic mental disorders). In essence, she argues that the ALJ failed to articulate adequately the basis for his conclusion that her medical conditions did not satisfy any listed impairment.

In assessing a claim, an ALJ applies the five-step analysis set forth in 20 C.F.R. § 404.1520: (1) is the claimant working; (2) if not, do her impairments significantly limit her ability to work and; (3) if so, is she impaired in a way that meets any of a list of impairments presumed to preclude gainful work. If not, then (4) does she have the residual functional capacity to perform her past work or, if not, (5) is there other work she can perform. *See Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004). In considering whether a claimant's condition meets a listed impairment, an ALJ must discuss the listing by name and offer "more than a perfunctory analysis" of the listing. *Barnett*, 381 F.3d at 668. An ALJ need not provide a written evaluation of every piece of evidence and testimony, however the ALJ must "build a logical bridge from the evidence to his conclusion." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In doing so, an ALJ also must confront the evidence in the record that does not support the ALJ's conclusion and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). An examining physician's opinion can be rejected only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining expert does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Here, the ALJ failed to conduct the proper analysis or provide sufficient justification for his findings after step 2 regarding Ms. Taylor's joint and spine problems. He never identified Listing 1.02A (joints) or 1.04A (spine) by name, nor did he identify by name any other listing under which he considered whether Ms. Taylor's knee and spinal disorders constituted a disability. More disturbing, however, is the fact that even though he found Ms. Taylor's knee and spinal impairments to be "severe," Admin. R. at 20, the ALJ nonetheless adopted in one sentence and without explanation the conclusions of the non-examining experts, Dr. Hutson and Dr. Stump, that they did not meet any impairment listed in the regulations.

Listing 1.02 defines dysfunction of a joint:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  There is considerable evidence on the record that at least three treating physicians diagnosed Ms. Taylor with knee conditions that met the listing.  For example, Dr. Ireland concluded that Ms. Taylor has severe osteoarthritis of both knees, limited motion in the right knee, and should undergo bilateral knee replacements.  Dr. Trainer agreed that she has severe osteoarthritis of the knees which may be aggravating her back condition, and needs a total knee replacement.  Dr. Huler noted that Ms. Taylor walks with a cane and that x-rays "reveal severe osteoarthritis of the right knee with a subluxed knee joint."  Admin. R. at 379-80.  Yet the ALJ never explained why he rejected this evidence from Taylor's examining physicians and adopted the opinions of the non-examining experts.  Likewise, Dr. Hutson, the non-treating expert who testified about Ms. Taylor's knee and spinal conditions, concluded without explanation that he does not believe Ms. Taylor meets any listed impairment.

The same lack of analysis applies to the ALJ's conclusion that Ms. Taylor's spinal disorders do not meet a listed impairment.  Listing 1.04 defines disorders of the spine to include spinal stenosis and degenerative disc disease, with neuro-anatomic distribution of pain, limitation of spinal motion, and positive straight-leg raising test.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  Again, neither the ALJ nor Dr. Hutson explained why they rejected the record evidence that Ms. Taylor's treating physicians diagnosed her with degenerative disc disease and severe spinal stenosis, that despite surgery she continues to experience both chronic back pain and difficulty performing routine tasks and motions, and that despite surgery she had a positive bilateral straight-leg raising test as recently as September 2002.

Unlike the ALJ's findings concerning Ms. Taylor's knee and spinal disorders, his finding that her mental disorder is not sufficiently severe is supported by substantial evidence and is adequately discussed.  Under Listing 12.02, a claimant must first demonstrate psychological or behavioral abnormalities, and must then demonstrate the required level of severity.  The ALJ concluded that Ms. Taylor's memory impairments and mild disturbances of mood or affect did not satisfy the severity portion of the listing because they did not markedly limit her activities of daily living, her social functioning, or her ability to maintain concentration.

Ms. Taylor asserts that the ALJ ignored evidence of her inability to concentrate and remember.  However, rather than disregarding her evidence, the ALJ acknowledged it and concluded that Ms. Taylor's mental difficulties were mild rather than severe.  To support his conclusion, the ALJ cited to the evaluation of consultative psychologist Dr. Wooden, which states, based on both objective and subjective assessments, that Ms. Taylor has only mild memory problems and mild depression and anxiety.  The ALJ also cited to Dr. Wiseman's opinion that Ms. Taylor's lack of motivation and sadness are not due to major depression but rather

to her social and financial situation and chronic pain. The ALJ discounted the assessment of Ms. Taylor's internist, Dr. Ra-Hurka, because of the inherent contradiction in her finding that Ms. Taylor has "mild but significant" short-term memory problems. Admin R. at 19, citing Admin. R. at 325. And finally, the ALJ found that Ms. Taylor's own testimony about her daily activities did not support a finding that she was severely mentally impaired. Accordingly, the ALJ's finding that Ms. Taylor's mental impairments are not sufficiently severe to satisfy Listing 12.02 is supported by substantial evidence.

## B.  Credibility Determination Regarding Pain

Ms. Taylor next argues that the ALJ's adverse credibility determination regarding pain improperly ignored documentation of the extensive pain medication she had been prescribed, which, she contends, corroborates her assertion that, apart from her physical limitations, she suffered from disabling chronic pain that totally prevented her from maintaining gainful employment.

We shall affirm an ALJ's credibility determination so long as the ALJ gives specific reasons for the finding that are supported by the record. *See Brindisi ex rel. Brindisi v. Barnhart,* 315 F.3d 783, 787 (7th Cir. 2003). An ALJ's credibility determination will be overturned only if it is patently wrong. *Schmidt v. Barnhart,* 395 F.3d 737, 746-47 (7th Cir. 2005).

Here, the ALJ adequately explained, based on substantial evidence, why he did not entirely credit Ms. Taylor's claims of "incapacitating" pain from her brain surgery and orthopedic disorders. Admin. R. at 24. The ALJ noted that Ms. Taylor received epidural injections that generally gave her good pain relief until February 2000 and that her back pain was only "fairly" significant. Admin. R. at 25. The ALJ noted that, although she had some pain after her spinal surgery, her treating physicians found that she was not restricted in sitting, she engaged in meaningful employment in 2002, and she was able to perform other activities of daily living. Thus, the ALJ's determination that Ms. Taylor's assertion of total disability due to pain was not entirely credible is supported by substantial evidence.

## C.  Residual Functional Capacity and Vocational Assessment

Ms. Taylor correctly argues that the ALJ's determination at step 4 that she could perform sedentary work such as her previous jobs was not supported by substantial evidence. With sedentary work, a certain amount of walking and standing is "often necessary" for periods that generally should not exceed 2 hours in

an 8-hour workday, and unskilled sedentary jobs require "good use of the hands and fingers" for repetitive actions.  *See* SSA POMS § DI 25001.001(B)(39).  The ALJ noted that Ms. Taylor's treating physicians placed no limitation on her ability to sit. However, neither he nor Dr. Hutson explained how they reasoned that Ms. Taylor was capable of standing or walking for up to 2 hours per day in light of Dr. Trainer's and Dr. Huler's findings that Ms. Taylor has difficulty standing and walking, uses a cane to walk, has to sit down every 10 minutes, and is in need of a total knee replacement.  In addition, neither the ALJ nor Dr. Hutson explained why they did not consider evidence of Ms. Taylor's carpal tunnel impairment, including Ms. Taylor's testimony that she has no feeling in two fingers and has difficulty performing routine tasks such as picking up coins or turning the key in a lock.  The ALJ never asked the vocational expert to opine on the ability of someone to perform Ms. Taylor's prior jobs assuming limitations on the use of fingers and hands for repetitive actions, even after it was established that sedentary jobs require frequent, if not constant, use of the hands.

Accordingly, the ALJ's finding that Ms. Taylor can perform sedentary work is not supported by substantial evidence because he failed to explain why he rejected contrary evidence concerning her inability to stand and walk for up to two hours and use her hands and fingers for repetitive actions.

## Conclusion

There is substantial evidence to support the ALJ's conclusion that Ms. Taylor is not disabled by her mental impairment and pain.  However, the ALJ's conclusion that Ms. Taylor is not disabled by her knee and spinal disorders and that she is capable of performing sedentary work is not supported by substantial evidence, and no reason for rejecting contrary evidence is provided.  Accordingly, we affirm in part, vacate in part, and remand the case for further proceedings consistent with this order.  Ms. Taylor may recover her costs in this court.

AFFIRMED in part; VACATED in part and REMANDED