> NONPRECEDENTIAL DISPOSITION
> To be cited only in accordance with
> Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2013
Decided August 13, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-3354

| | |
|---|---|
| PAMELA THOMAS,<br>  *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 10 C 6045 |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>  *Defendant-Appellee*. | Robert W. Gettleman,<br>*Judge*. |

## O R D E R

An administrative law judge rejected Pamela Thomas's application for disability insurance benefits and supplemental security income, concluding that though she could not perform her past work she could still perform other jobs that exist in the national economy. Thomas principally contends that the ALJ failed to address a critical issue:

whether she needs a cane in order to stand and walk for six hours of an eight-hour workday. This question had heightened importance because a vocational expert's testimony  established that Thomas (who was 52 at the time of the ALJ's decision) must be found disabled as of her 50th birthday if she requires the use of a cane. Because the ALJ overlooked this issue and made other errors, we reverse the judgment of the district court and remand the case with instructions that it be returned to the agency for further proceedings.

## I

Pamela Thomas applied for benefits in 2005 and alleged that she became disabled on January 19, 2002, when she was seriously injured in car accident (she was inside a vehicle that flipped over seven times). The accident produced multiple injuries and exacerbated preexisting problems with Thomas's lower back: mild degenerative disc disease throughout her lower lumbar spine as well as disc herniation and a moderate degree of canal stenosis in the same region. Thomas was employed as a nurse's aide at the time of the accident, but could not continue working after she was released from the hospital.

Over the next three years Thomas received treatment from her primary care physician, Bryan Feldman, for pain in her shoulders, feet, and lower back. During examinations he determined that Thomas had an antalgic gait (a limp), restricted range of motion in her lower back, and an ability to bend only at ten degrees when trying to touch her toes. Thomas also reported that she had injured herself while falling several times, and in 2003 Dr. Feldman prescribed a cane.

In 2005 Thomas moved from Ohio, where she had been living alone, to her daughter's home in Illinois because she could no longer care for herself. In an "Activities of Daily Living" questionnaire submitted to the state agency shortly after the move, Thomas explained that she kept injuring herself and could not afford to purchase medication. She reported that she was in constant pain and sat down as much as possible, but had to shift positions every fifteen minutes or her back would "start up like a toothache." Thomas also said that she did not drive or perform chores and required a cane to walk, stand, and balance; without a cane, she maintained, she was "[thrown] off balance." Thomas's daughter contacted the agency a few months later and corroborated her account, explaining that her mother spent her time watching television and no longer could perform chores or afford medication.

After Thomas applied for benefits, Dr. ChukwuEmeka Ezike conducted a consultative examination for the state agency and diagnosed her with (among other things) chronic low back pain. Dr. Ezike wrote that Thomas had "moderate difficulty" performing a toe/heel walk, could bend her lower back at only 50 degrees with "mild pain," and "was unable to squat." He also noted that "[t]he claimant could walk greater than 50 feet without support," but added in the next sentences that "[t]he gait was antalgic without the use of assistive devices" and "[s]he ambulates with a cane for support and confidence."

Another consulting physician, Dr. Richard Bilinsky, later reviewed Dr. Ezike's report in order to evaluate Thomas's residual functional capacity, but he assessed few physical limitations. Among other conclusions, Dr. Bilinsky determined that Thomas could stand or walk for six hours of an eight-hour work day, "frequently" balance, and "occasionally" stoop, kneel, crouch, and crawl. He noted Dr. Ezike's references to Thomas's cane, but in his written assessment he did not check a box indicating that a "medically required hand-held assistive device is necessary for ambulation."

After Dr. Ezike's consultative examination, Thomas continued to receive treatment for her back and other ailments. In 2007 a surgeon reviewed updated MRI scans of her lumbar spine and diagnosed severe lumbar stenosis and a herniated disk. The surgeon then performed a decompressive laminectomy with facetectomy and discectomy—an operation where facet joints, a disc, and a portion of the vertebra are removed from the patient's lumbar spine. *See* Lumbar Discectomy, *available at* http://orthopedics.about.com/cs/ herniateddisk/a/ruptureddisk_3.htm; Decompressive Surgery For Lumbar Spinal Stenosis, *available at* http://www.lumbarspinalstenosis.com/treatment-for-spinal-stenosis-decompressive-lumbar-laminectomy.html (noting that full recovery from laminectomy typically requires six months). Hospital notes taken the day before the surgery reflect that Thomas walked with a cane and a limp; Thomas also explained her need for a cane in another questionnaire that she filled out for the state agency after Dr. Ezike's examination.

At a hearing before the ALJ in 2008, Thomas repeated the same complaints of significant physical limitations that she and her daughter had previously reported to the agency. Thomas asserted that she had constant lower back pain that had not improved since her surgery, and which she could alleviate only by lying down or taking prescription pain medication (Soma, Vicodin, and Tylenol 3). Thomas stated that she once tried to return to work after her car accident when she began a home-care job in

2003, but could not do the work because it put too much strain on her back. She testified that in an average day she mostly lies down on a bed or loveseat watching television, and explained that her daughter bought groceries and cooked for her. Thomas estimated that she could lift three pounds, and in an eight-hour work day could walk for one hour, stand for less than one hour, and sit for 15 minutes before needing to change positions.

Thomas also testified at the hearing about her need for a cane, though only in response to questions from her lawyer. (The ALJ did not question Thomas about her cane use.) Thomas's attorney noted for the record that she had brought a cane to the hearing, and Thomas stated that she used it every day to walk, get out of bed, and climb stairs. She explained that she had problems falling and needed the cane to balance herself when she experienced muscle spasms. Thomas also said that her daughter's home was equipped with other assistive devices for her benefit: "special mats on the floor" to keep her from falling, railings going up the steps, and a "special shower chair" to allow her to sit while bathing.

At the end of the hearing, the ALJ asked a vocational expert whether a hypothetical individual could perform Thomas's past relevant work (including jobs as a nurse's aide, housekeeper, warehouse worker, and cashier) if she were limited to light work[1] and jobs that involve only (1) simple, repetitive tasks; (2) occasional contact with the public, co-workers, and supervisors; (3) no strict time or production requirements; (4) occasional climbing, stooping, kneeling, crouching, and crawling; and (5) frequent balancing. The VE answered that the individual could not perform Thomas's past work but could perform two "light work" jobs (mail clerk or a room-service clerk) and two "sedentary work" jobs (order clerk or a surveillance systems monitor), all of which existed in significant numbers in Thomas's region of the country. Under questioning from Thomas's lawyer, however, the VE said that the individual would not be able to perform either "light work" position if, in addition to the limitations proposed by the ALJ, she needed a hand-held assistive device (such as a cane).

The ALJ denied Thomas's claim for benefits after applying the five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a). The ALJ concluded that Thomas had not worked since her alleged onset date (Step 1); had severe impairments

---

[1] "Light work," among other things, requires an individual to be able to walk or stand for a total of six hours out of an eight-hour work day. *See* SSR 83-10, 1983 WL 31251, at *5–6; *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

of degenerative disc disease of the lumbar spine, arthritis, depression, bipolar disorder, and anxiety (Step 2); her impairments did not meet or equal a listed impairment (Step 3); she could not perform her past relevant work (Step 4); but could perform the four jobs listed by the VE and thus was not disabled (Step 5). At the fourth and fifth steps, the ALJ incorporated the same physical and mental capabilities he had proposed to the VE as Thomas's residual functional capacity, concluding that she could perform a limited range of unskilled light work. But the ALJ added that Thomas would not be disabled even if she were limited to sedentary work because the VE had identified two sedentary positions she could perform. The ALJ emphasized that he relied on the VE's testimony and placed "great weight" on the opinion of Dr. Bilinsky, because his opinion was based on the report of the state agency's examining physician, Dr. Ezike. In contrast, he found Thomas's testimony not fully credible because her medical treatment was mostly "conservative" and not what "one would expect" for someone with her alleged symptoms. After the Appeals Council denied review, the district court upheld the ALJ's decision.

## II

On appeal Thomas first contends that the ALJ erred by not meaningfully addressing the evidence in the record that she needs a cane in order to stand and walk. This issue was critical, Thomas insists, because (1) the VE said that her dependence on a cane would preclude her from performing the only two light jobs she was otherwise capable of doing, and (2) under the agency's Medical Vocational Guidelines (or "grids"), an individual with Thomas's characteristics must be found disabled on her 50th birthday if she is limited to sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14 (providing that claimant between ages of 50 and 54 is disabled if limited to sedentary work, has education that does not provide for direct entry into skilled work, and has no transferable skills from previous work experience); *see Haynes v. Barnhart*, 416 F.3d 621, 627–628 (7th Cir. 2005) (explaining that grids determine whether claimant is disabled when claimant matches all criteria of particular rule).

We agree with Thomas that the ALJ's failure to address her need for a cane requires remand. "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 618, 621 (7th Cir. 2010); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Here, the ALJ ignored virtually all the evidence in the record demonstrating Thomas's need for a cane; the ALJ's lone mention of the cane is a

reference to Dr. Ezike's note that Thomas "ambulates with a cane for support and confidence," buried among a litany of other findings. The ALJ did not say more or address the extensive other evidence concerning Thomas's need for a cane, including (for example) Dr. Feldman's notes describing repeated falls by Thomas and his prescription for a cane, the questionnaires Thomas submitted to the state agency explaining her need for a cane, the reports of Dr. Ezike and Dr. Bilinsky noting her cane use, and, most concerning, the presence of the cane at Thomas's hearing and her testimony about why she needed it. This evidence was critical because Thomas should have been found disabled if she could not perform light work, and the VE testified (also overlooked in the ALJ's decision) that Thomas could not perform any light work jobs if she needed to use a cane.

The Commissioner defends the ALJ's discussion of Thomas's cane use on several grounds. She first argues that the ALJ said enough to adequately address Thomas's alleged need for a cane because he found her testimony not fully credible and accepted Dr. Bilinsky's physical RFC assessment, which left blank a box that asked if Thomas required a hand-held assistive device. But the ALJ's RFC assessment needed to address why Thomas's reported limitations were or were not consistent with the evidence in the record, *see* SSR 96-8p, 1996 WL 374184, at *7; *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013); relying on Dr. Bilinsky's assessment and generally discrediting Thomas's testimony without addressing her reliance on a cane did not satisfy that obligation or build the requisite "logical bridge" between the evidence and the ALJ's conclusions. *See, e.g., Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Commissioner also implies that the ALJ had no obligation to address the evidence regarding Thomas's cane because, in order to find a hand-held assistive device "medically required" for a claimant limited to sedentary work, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7. The error in this case, however, is not that the medical evidence *required* the ALJ to find that Thomas needed a cane to stand and walk, but that the ALJ failed to consider the issue at all, leaving us without a finding to review. We cannot uphold the ALJ's decision based on a reason that the ALJ did not articulate. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

The Commissioner last argues that even if the ALJ should have determined that Thomas required a cane, a remand is not necessary because the ALJ concluded that she is not disabled if she could perform only sedentary jobs. But that conclusion is contradicted by the fact that the grids *mandate* a finding of disability at Thomas's 50th

birthday if she is limited to sedentary work, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.14, which the ALJ appears not to have recognized. The Commissioner does not dispute that Thomas is disabled under the grids if she could perform only sedentary work; we therefore reverse the judgment of the district court and remand so the ALJ can decide whether Thomas needs a cane in order to stand or walk.

Thomas has also identified other errors in the ALJ's decision that must be corrected on remand. First, substantial evidence does not support the ALJ's finding that Thomas could walk or stand for six hours of an eight-hour work day—another dispositive issue, since Thomas must be found disabled at her 50th birthday if she could not perform light work. The only evidence the ALJ cited in support of that finding is Dr. Bilinsky's RFC assessment, which was based on Dr. Ezike's examination. But the only observation Dr. Ezike made with respect to Thomas's ability to stand and walk was that, though she limped without a cane and used one for "support and confidence," she "could walk greater than 50 feet without support." We have previously concluded, under nearly identical facts, that walking for 50 feet without a cane—a "brief excursion"—does not demonstrate an ability to stand for 6 hours. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). Second, despite placing "great weight" on Dr. Bilinsky's assessment, the ALJ also failed to resolve inconsistencies between the assessment and the report on which it is based: Dr. Ezike found that Thomas had only 50 degrees of flexion in her lower back and "was unable to squat," yet after reviewing his report Dr. Bilinsky determined that Thomas could stoop, kneel, crouch, and crawl for one-third of an eight-hour work day. *See Golembiewski*, 322 F.3d at 917 (ALJ erred in finding that claimant could occasionally stoop without addressing report that claimant had only 40 degrees of flexion in lower back). Given that Thomas's only physical consultative examination occurred 19 months before she was diagnosed with severe lumbar stenosis and underwent significant back surgery, the ALJ on remand should strongly consider ordering another medical evaluation to determine Thomas's abilities to stand, walk, squat, and bend her back. *See* 20 C.F.R. §§ 404.1517, 416.917; *Scott*, 647 F.3d at 741; *Smith v. Apfel*, 231 F.3d 433, 437–38 (7th Cir. 2000).

Third, the ALJ on remand must revisit his adverse credibility determination. That determination begins with the often-criticized boilerplate that Thomas's impairments "could reasonably be expected to produce the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." *See Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012) (explaining that nearly identical language erroneously implies that claimant's

ability to work is determined before her credibility). The two reasons the ALJ then provides for discrediting Thomas are both nonsensical. The first—that Thomas's alleged daily activities "cannot be objectively verified with any reasonable degree of certainty"— ignores the fact that Thomas's daughter (who forced Thomas to move in with her so that she could provide care) confirmed the type and extent of Thomas's daily activities. The ALJ also reasoned that the medical evidence, which he described as showing "minimal objective findings" and "conservative" treatment apart from Thomas's back surgery, was not what "one would expect" for someone with Thomas's alleged symptoms. We fail to understand why Thomas's treatment after her roll-over car accident—continuous efforts to treat her pain with medication before undergoing a laminectomy—undermines her allegations of crippling back pain. Moreover, a claimant's testimony about her symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence," SSR 96-7p, 1996 WL 374186, at *1; *see also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009), and an ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms, *see Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013). The ALJ must follow those obligations on remand.

The judgment of the district court is **REVERSED**, and the case is **REMANDED** with instructions that it be returned to the agency for further proceedings consistent with this order.