In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-1590

JONATHAN D. CAIN,

*Plaintiff-Appellant,*

*v.*

FRANK BISIGNANO, Commissioner of Social Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:22-cv-00150-KMB-TWP — **Kellie M. Barr**, *Magistrate Judge.*

———————————

ARGUED DECEMBER 12, 2024 — DECIDED AUGUST 4, 2025

———————————

Before RIPPLE, SCUDDER, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* After Jonathan Cain applied for supplemental security income, an administrative law judge concluded that Cain was capable of performing some types of work even with his acknowledged impairments. The ALJ therefore denied Cain disability benefits, which he challenged in federal court. The district court affirmed the denial of benefits, holding that substantial evidence supported the ALJ's conclusion. Because the ALJ met the minimal

articulation requirements in assessing the medical evidence and did not err in relying on the vocational expert testimony, we agree and affirm.

## I.

### A. Background

Cain was born in 1983, has a high school education, and has no past work activity. He suffers from severe impairments that he alleges prevent him from maintaining employment, including degenerative disc disease, migraine headaches, obesity, depression, and anxiety. Before applying for SSI, Cain made several trips to the emergency room for severe migraine headaches, anxiety and panic attacks, chest pain, back pain from degenerative changes in his spine, toe pain, and possible COVID-19 infection.

Cain has been treated by Dr. Amanda Williams, a family medicine physician, for various ailments. Dr. Williams prescribed medication for Cain's anxiety and depression, referred him to physical therapy for his back pain, and recommended that he lose weight and stop smoking to relieve his other symptoms. Cain initially reported that his depression and anxiety improved with medication, but in 2021, he described his depression and anxiety as worsening. But Dr. Williams refused to prescribe him controlled substances for these conditions because of his admitted marijuana use.

Cain began talk therapy for his anxiety and depression but was hospitalized shortly after for panic attacks and suicidal ideation when he stopped taking his medication. At the hospital, Cain received medication and was discharged one week later.

Cain applied for supplemental social security income on July 27, 2020. His claim was denied initially and again on reconsideration. He then requested an administrative hearing.

### B. Administrative Hearing

Cain, represented by counsel, testified at his administrative hearing that the multiple anxiety attacks that he experienced each day was his biggest obstacle to working. He also testified about his history of severe headaches and back pain. Cain explained that he spent most of his time at home due to his pain and anxiety.

A vocational expert, Thomas Dunleavy, also testified. Dunleavy has a Master of Science in Rehabilitation Counseling and nearly forty years of professional experience providing career counseling and job placement services. During the hearing, Cain did not object to Dunleavy's qualifications as a vocational expert.

Dunleavy testified that an individual of Cain's age, education, past work experience, and residual functional capacity (RFC) could perform a number of sedentary and non-sedentary jobs that exist in the national economy. When the ALJ asked Dunleavy to consider only sedentary jobs with no public interaction, Dunleavy concluded that an individual with Cain's restrictions could perform the jobs of sorter (18,000 jobs), assembler (20,000 jobs), and visual inspector (21,000 jobs).

Cain's attorney questioned Dunleavy about his method for calculating these numbers. Dunleavy explained that he looked at the Occupational Employment Survey and factored in county business patterns, the number of establishments that exist in an industry likely to be employing people, and

relevant Census Bureau statistics. Dunleavy also based his opinions on his experience in job placement, although he admitted he had never placed any individuals in the jobs that he concluded an individual with Cain's restrictions could perform.

The ALJ also considered Cain's medical records, including a report prepared by physical therapist Nancy Mahan Turner. Mahan Turner administered a disability examination to Cain in September 2021. Cain told Mahan Turner that he rarely left home, and, while he could do some basic household chores like cooking and cleaning, these were difficult because of his back pain. He also told her that he could stand for only one to two minutes and sit for 15 to 30 minutes before needing to rest. Mahan Turner concluded that Cain's back pain limited him in performing functional tasks like lifting and carrying objects. She also concluded that, during an eight-hour workday, he would need unscheduled breaks every 30 minutes, lasting 10 to 15 minutes. Despite Cain's reports that sitting caused him pain as well, Mahan Turner determined that he had the ability to sit and perform fine motor skills.

Cain's medical records also included prior administrative findings prepared by two state agency psychologists, Dr. Joelle Larsen and Dr. Ken Lovko. Dr. Larsen reviewed Cain's medical records as part of Cain's initial application, and Dr. Lovko reviewed the records on Cain's request for reconsideration. Both Drs. Larsen and Lovko completed a series of Mental Residual Functional Capacity Questions (MRFC), rating Cain's ability to perform certain tasks related to understanding, memory, concentration, persistence, and social interaction. Both Dr. Larsen and Dr. Lovko concluded that Cain had moderate limitations in four areas: (1) understanding and

remembering detailed instructions, (2) carrying out detailed instructions, (3) maintaining attention and concentration for extended periods, and (4) interacting appropriately with the public. Dr. Lovko also found Cain moderately limited in his ability to perform consistently during a normal workday and workweek without taking long breaks because of his psychological symptoms.

### C.  ALJ's Determination

The ALJ determined that Cain was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 1382c(a)(3). To reach this conclusion, the ALJ applied the five-step evaluation process set forth in 20 C.F.R. § 416.920(a)(4). At steps one and two of the analysis, the ALJ determined that Cain had not engaged in substantial gainful activity since he applied for SSI and that he had severe impairments—degenerative disc disease, obesity, depression, anxiety, and migraines—that significantly limited his ability to perform basic work activities. At step three, the ALJ found that Cain did not have an impairment that met or equaled any impairment listed in the regulations as being so severe as to preclude substantial gainful activity.

Before moving to step four, the ALJ determined that Cain had the RFC to perform work at a sedentary level. 20 C.F.R. § 416.967(a). Cain's diagnoses limited him to simple, routine, and repetitive tasks in environments with simple changes that occur only occasionally and to jobs where he could perform tasks independently, with only occasional interaction with others. The ALJ assessed Mahan Turner's report as minimally persuasive but found the state agency psychologists' reports generally persuasive. At steps four and five of the analysis, the ALJ relied on Dunleavy's testimony to conclude that Cain was

capable of performing jobs that exist in significant numbers in the national economy.

Cain appealed the ALJ's decision to the Appeals Council, which denied review. He then challenged the ALJ's decision in federal court, arguing that he committed several reversible errors. The district court affirmed the ALJ, concluding that substantial evidence supported his decision. Cain appeals.

## II.

We review the district court's decision de novo and defer to the agency's factual findings so long as they are supported by "substantial evidence." *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowell*, 72 F.4th at 813 (quoting *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)) (citation modified).

Our role is "extremely limited," and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination. *Id.* at 814 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). We will affirm unless the ALJ made a legal error, or the decision is not supported by substantial evidence. *Id.* at 813. If the ALJ "provide[s] a logical bridge between the evidence and [his] conclusions," we must affirm. *Id.* at 814 (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

An individual is disabled for purposes of the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

### A. Medical Opinions

Cain argues that the ALJ committed reversible error by failing to adequately evaluate the medical opinions of Mahan Turner, Dr. Larsen, and Dr. Lovko. We see no error because substantial evidence supported the ALJ's conclusions about the persuasiveness of these medical opinions.

To determine the persuasiveness of a medical opinion, the ALJ considers the following factors: supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)–(5). The most important of these factors are supportability and consistency. § 416.920c(a). The ALJ must explain its consideration of these two factors but need not address the remaining factors. § 416.920c(b)(1)–(2).

To assess supportability, an ALJ looks at the extent the relevant and objective medical evidence supports the medical opinion. § 416.920c(c)(1). The more the evidence supports the opinion, the more persuasive it is. *Id.* To gauge consistency, the ALJ considers the extent to which the medical opinion is consistent with other medical evidence in the record. § 416.920c(c)(2). Similarly, the more consistent the opinion is, the more persuasive it is. *Id.*

In making these determinations, an ALJ is subject "to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). That is, the "ALJ

need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Id.* (citations omitted). While minimal, this standard requires the ALJ to "confront the evidence that does not support [his] conclusion and explain why it was rejected." *Stephens v. Berryhill*, 888 F.3d 323, 329 (7th Cir. 2018) (quoting *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

### 1. Mahan Turner

Cain's main argument about Mahan Turner's report is that the ALJ improperly discounted portions of her opinion based on Cain's subjective claims. Cain's arguments fail for two reasons: the ALJ met the minimal articulation standard in explaining why he found Mahan Turner's report minimally persuasive, and Cain concedes that the ALJ's RFC determination is ultimately consistent with Mahan Turner's conclusions.

An ALJ cannot reject a claimant's own testimony about the limitations on his daily activities merely by concluding that the testimony is not supported by medical evidence. *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014) (citations omitted). Rather, an ALJ must consider a claimant's subjective complaints of pain when the claimant's impairments could "reasonably be expected to produce the pain." *Id.* (citing *Indoranto*, 374 F.3d at 474).

At the same time, if a physician's opinion relies solely on the claimant's subjective complaints, it is within the ALJ's discretion to discount that opinion. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (citing *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) and *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020)); *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir.

2005) (treating physician's opinion not entitled to controlling weight because it was based on claimant's subjective complaints which were "not credible" in light of the other medical evidence).

Here, the ALJ did not discount Mahan Turner's report solely because she relied on Cain's subjective complaints, but because they were inconsistent with the other medical evidence. For example, Mahan Turner opined, based on Cain's subjective complaints, that he could sit for 30 minutes at one time and for less than two hours in an eight-hour day. But this conclusion was inconsistent with other evidence in the record showing that Cain had no significant problems sitting for extended periods.

More significantly, at no point did the ALJ reject Cain's testimony about his own limitations. In fact, he credited Cain's self-reported pain scores limiting him to sedentary work, and credited Cain's testimony about his anxiety and social isolation by limiting him to jobs where tasks can be performed independently. The ALJ was entitled to weigh Mahan Turner's conclusions against the other evidence in the record, which showed that Cain could sit for extended periods. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (it is "entirely permissible" for the ALJ to examine the claimants' daily activities to assess claimant's testimony about the effects of impairments (citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) and 20 C.F.R. § 404.1529(c)(3)(i))).

As to Cain's arguments that the ALJ substituted his own judgment for that of Mahan Turner's, the ALJ laid out the portions of Mahan Turner's opinion that were either internally inconsistent or were not supported by other evidence. The ALJ therefore adequately considered both the consistency and

supportability of Mahan Turner's opinion, and substantial evidence supports his determination.

Cain's remaining arguments about Mahan Turner's report ask us to reweigh the evidence. He seeks remand to require the ALJ to revisit Mahan Turner's report and provide a better explanation as to why he found it minimally persuasive. We direct him back to our role in review: we will only remand if the ALJ's decision is not based on substantial evidence or if the ALJ committed legal error. *Crowell*, 72 F.4th at 813.

Regardless, on appeal Cain concedes that the ALJ's RFC determination is ultimately consistent with Mahan Turner's findings and Cain's subjective complaints about his limitations. Cain does not explain how the RFC analysis should have been different or show how the ALJ's determinations lack substantial support in the record. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Accordingly, the ALJ did not commit legal error in analyzing Mahan Turner's report.

## 2. State Agency Psychologists

We turn next to Cain's arguments that the ALJ erred in interpreting the reports of the state agency psychologists, Drs. Larsen and Lovko. Cain argues that remand is necessary because the ALJ discounted the checkbox portions of these reports, ignored inconsistencies between the reports, and should have requested clarification about a vague portion of Dr. Lovko's report. Each of these arguments fails.

First, the ALJ adequately explained the portions of the reports that were either persuasive or conflicted with other evidence in the record and appropriately considered both the narrative and checkbox sections of the reports. "Worksheet observations" like those prepared by Dr. Lovko and Dr.

Larsen are "medical evidence which cannot just be ignored" in the RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). While the ALJ is entitled to rely on the narrative explanation, the ALJ "still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the … MRFC forms." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (citation omitted).

Cain argues that the ALJ's RFC analysis failed to account for Dr. Lovko's and Dr. Larsen's checkbox responses that he was moderately limited in his concentration, persistence, and maintaining pace abilities. Cain also argues that the ALJ cherry-picked evidence from the narrative portions of the reports to support the RFC determination. This misunderstands the ALJ's analysis. The ALJ's RFC determination limiting Cain to performing simple, routine, and repetitive tasks is consistent with the moderate limitations noted by Dr. Larsen and Dr. Lovko's checkbox responses. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("[A] 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace."). The ALJ also adequately compared the checkbox responses noting moderate limitations with other evidence in the record, like the fact that Cain was typically cooperative and had an appropriate affect during his medical appointments. Accordingly, substantial evidence supported the ALJ's RFC determination.

Second, while Cain points to purported inconsistencies between Dr. Lovko's and Dr. Larsen's opinions about his ability to interact with others, the ALJ harmonized these opinions in his RFC determination. In the narrative portion of her report, Dr. Larsen concluded that Cain should not be required to

have prolonged, intensive interaction with others. And Dr. Lovko concluded that Cain could relate on a superficial and ongoing basis with coworkers and supervisors. We struggle to see any practical inconsistency here. But in any event, the ALJ recognized these slightly different articulations of Cain's abilities. He considered them in light of the other medical evidence in the record in determining that Cain is limited to "independent tasks" and "occasional interactions with supervisors, coworkers, and the public." The ALJ sufficiently determined the supportability and consistency of Dr. Lovko's and Dr. Larsen's reports given the minimal articulation requirement. *Morales*, 103 F.4th at 471.

Third, while the ALJ found Dr. Lovko's opinion that Cain could attend to tasks for a sufficient period to complete them was "vague," the ALJ was not required to seek clarification from Dr. Lovko. We have only required an ALJ to seek additional information if the support for a medical opinion is not "readily discernable." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)). Here, the record contained sufficient information necessary to make an assessment. The ALJ recognized that Dr. Lovko's opinion, while vague, was consistent with other record evidence showing that Cain struggled with concentration. At the same time, the ALJ noted other evidence showing that Cain was alert, oriented, and attentive during his medical appointments. Balancing these findings, the ALJ limited Cain to maintaining concentration on simple, routine, and repetitive tasks for two-hour periods. The record therefore contained sufficient information for the ALJ to make this RFC determination. *See Skinner v. Astrue*, 478 F.3d 836, 843–44 (7th Cir. 2007) (ALJ not required to re-contact treating physician for

further information when the "record contained adequate information for the ALJ to render a decision").

We find that the ALJ's conclusion that Dr. Lovko's and Dr. Larsen's reports were generally persuasive is supported by substantial evidence.

### B. Vocational Expert Dunleavy's Testimony

Finally, we turn to Cain's arguments that the ALJ improperly relied on Dunleavy's expert testimony to conclude that there are jobs in the national economy that Cain can perform. The district court found that Cain waived any challenge to Dunleavy's testimony because he did not object to Dunleavy's qualifications or testimony during the hearing.

When a claimant fails to object to a vocational expert's qualifications or testimony during the hearing, the claimant forfeits those arguments, *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (citation omitted), and the ALJ is entitled to accept the vocational expert's conclusions, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

Cain does not dispute that he neither objected to Dunleavy's testimony during the hearing nor raised any similar challenge in his post-hearing brief. Instead, he argues that he was not required to do so and relies on the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Our circuit rejected Cain's argument in *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) (quoting *Carr v. Saul*, 593 U.S. 83, 92 & n.5 (2021)). We reiterated that a claimant must object to vocational expert testimony during the administrative hearing to preserve the issue for judicial appeal. *Id.* We are bound by that precedent and therefore reject his argument.

Nor does *Sims* compel a different result. The issue here is forfeiture by failure to raise an argument before the ALJ in the first instance, not exhaustion before the intermediate agency appeals board. *Sims*, 530 U.S. at 109–10. The lesson to advocates is clear—lodge sufficient objections to testimony at administrative hearings to preserve those arguments for judicial review.

But even if Cain had not forfeited these arguments, they fail on the merits. Dunleavy set forth a sufficient methodology for his opinions. To recap, at step 5 of the analysis, the agency bears the burden of demonstrating that there are a significant number of jobs in the national economy for someone with the claimant's abilities and limitations. *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022). To do so, vocational experts rely on Department of Labor publications to calculate and predict the number of jobs in the national economy for any given occupation. *Id.*

We find that Dunleavy provided a reliable basis for his job number predictions. First, in response to questioning from Cain's attorney during the hearing, Dunleavy explained that he used the Department of Labor publications, factored in county business patterns, and estimated the number of full-time positions based on Census Bureau data. Second, Dunleavy explained that he exercised his professional judgment to sort out jobs listed in the DOL publications that may now be obsolete. Third, while Dunleavy admitted that he had not directly placed anyone in the specific occupations that he stated Cain could perform, he was "familiar with" these jobs, had "seen them performed," and has had "extensive dialogue with other vocational experts on a national level routinely." As we have previously explained in the context of similar

vocational methodology, "a VE who" like Dunleavy "provides a reasoned explanation based on hands-on experience working in the field, market surveys, or conversations with employers, can establish sufficient confidence in his job-number estimates …." *Hohman v. Kijakazi*, 72 F.4th 248, 253 (7th Cir. 2023) (citation omitted). Accordingly, the ALJ did not err in relying on Dunleavy's testimony to conclude that Cain is capable of performing jobs that exist in significant numbers in the national economy.

### III.

In sum, we conclude that the ALJ's decision was supported by substantial evidence. We AFFIRM the judgment of the district court.