In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2460

JENNIFER LEE MOORE,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 6153 — **Susan E. Cox**, *Magistrate Judge.*

ARGUED JANUARY 15, 2014 — DECIDED FEBRUARY 27, 2014

Before FLAUM, EASTERBROOK, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jennifer Lee Moore filed an application for disability benefits under the Social Security Act, alleging that she became disabled on September 6, 2007. After a hearing, an Administrative Law Judge (ALJ) concluded that Moore suffered from a number of severe impairments, but that she was capable of performing her past work and therefore

was not entitled to disability benefits. The district court affirmed, and Moore appeals that determination to this court.

When the Appeals Council denies review as it did in this case, the ALJ's decision constitutes the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009). Because our review of the district court's affirmance is *de novo*, we review the ALJ's decision directly. *Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013). We will uphold the ALJ's decision if it is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Pepper*, 712 F.3d at 361–62. Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford Moore meaningful judicial review. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Pepper*, 712 F.3d at 362; *Villano*, 556 F.3d at 562. A decision that lacks adequate discussion of the issues will be remanded. *Id*.

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Moore was not so engaged, and therefore the analysis proceeds to the second step, which is a consideration of whether the claimant

has a medically determinable impairment, or combination of impairments, that is "severe." 20 C.F.R. §§ 404.1520(c) and 416.920(c).

In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities. If the evidence indicates that an impairment is a slight abnormality that has no more than a minimal effect on an individual's ability to work, then it is not considered severe for Step 2 purposes. Here, the ALJ determined that Moore had the following severe impairments: migraine headaches; asthma; morbid obesity; and rheumatoid arthritis. The ALJ concluded that those impairments imposed more than minimal limitations on Moore's ability to perform basic work-related activities. The ALJ concluded that a number of other impairments impacting Moore were not severe, including irritable bowel syndrome, gastroesophageal reflux disease, hypertension, hypothyroid and prolactin irregularities, carpal tunnel syndrome, depression, anxiety, and possible Crohn's disease.

At Step 3, the ALJ determined that those severe impairments did not meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, the ALJ proceeded to Step 4, at which point the claimant has the burden to demonstrate whether she is capable of performing her past relevant work. *Young*, 362 F.3d at 1000. At this stage, the ALJ first considers the claimant's residual functional capacity (RFC), which is the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments. *Id.*; *Pepper*, 712 F.3d at 362. The ALJ concluded that Moore had the

residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that she must avoid concentrated exposure to extreme cold, extreme heat, noise, fumes, odors, dusts, gases, poor ventilation, hazardous machinery, and heights. The ALJ's calculations of Moore's RFC, and the ultimate determination at Step 4 that Moore could perform her past relevant work as a reservation agent, is the focus of the challenge in this appeal.

Moore argues on appeal that the ALJ erred at Step 4 in determining the limitations and restrictions imposed upon Moore's work by her chronic migraines, and that the ALJ also erred in her credibility assessment of Moore. The ALJ's RFC determination in this case, and the limitations presented to the vocational expert that followed from that determination, are conclusory and are based on findings that failed to address the record as a whole. Accordingly, a remand is necessary.

The ALJ acknowledged her obligation to evaluate the intensity, persistence, and limiting effects of symptoms of Moore's impairments including the chronic migraines, and to determine the degree of effect on functioning. In calculating that residual functional capacity, she stated that whenever statements concerning the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, she must make a finding concerning the credibility of the statements based upon the evidence in the record as a whole. The ALJ then noted that Moore maintained that her migraines are debilitating, and cause her to stay in bed much of the day, render her unable to deal with light and sound, and result in a heightened sense of smell that aggravates her nausea and headaches. Using

"boilerplate" language often included in disability determinations, the ALJ then concluded: "[a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."

We have repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record. *Pepper*, 712 F.3d at 367; *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). In short, it fails to elucidate at all the basis for the RFC determination. *Pepper,* 712 F.3d at 367. It "puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion." *Filus*, 694 F.3d at 868. We have held, however, that the use of such boilerplate language will not automatically discredit the ALJ's ultimate conclusion if the ALJ otherwise identifies information that justifies the credibility determination. *Pepper*, 712 F.3d at 367–68. Here, the ALJ proceeded to engage in a more detailed credibility analysis, thus providing a basis for us to review that assessment.

In considering Moore's credibility, the ALJ first recited the history of Moore's treatment for migraines, but the ALJ related only a narrow portion of that medical evidence. The ALJ noted that Moore was diagnosed with intractable migraines and

underwent implantation of a subcutaneous occipital nerve stimulator at the University of Illinois Hospital at Chicago ("UIC Hospital") in February 2007. The ALJ then stated that the surgery worked well until the battery was depleted in May 2008, at which time the depleted battery was replaced with a rechargeable battery. In addition, the ALJ noted that the record was replete with emergency room visits, but that Moore's own doctors—Dr. Leonard Robinson and Dr. Bridgette Arnett—as well as the emergency room physicians have questioned Moore's emergency room visits as problematic or drug-seeking. The ALJ proceeded to detail the notations in the record indicating such a concern with Moore's drug-seeking tendencies, including a statement that Moore's "own parents have observed this behavior as potential addiction to narcotic pain medication." The ALJ concluded "[w]hile the claimant's noncompliant and drug-seeking behaviors do not singularly discount her credibility, I find persuasive the observations of her own treating and examining providers as well as her parents that the emergency room [visits] are related to medication seeking rather than mere migraine control."

The ALJ did not err in considering the evidence that Moore's emergency room visits may have been related to an addiction problem rather than evidence of debilitating migraines, but the ALJ erred in utterly failing to even acknowledge the contrary evidence or to explain the rationale for crediting the identified evidence over the contrary evidence. We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it. *Terry v.*

*Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ in this case presented only a skewed version of the evidence.

For instance, the ALJ declared that Moore's "own parents have observed this behavior as potential addiction to narcotic pain medication." The record indeed includes evidence that the parents were concerned with whether Moore was becoming addicted to the pain medication that she sought for treating her migraines. What the ALJ failed to address in relying on that, however, is the testimony of Moore's mother that when she expressed such concerns, Moore's doctors assured her that Moore was not addicted and needed the help being given. Moore's mother further stated that Dr. Thomas Bartuska, Moore's treating psychiatrist, made that assurance three or four years earlier, and that she subsequently received the same message from the neurosurgeon and treating neurologist at UIC Hospital a few months after Moore was enrolled in the headache study and approved for the stimulator surgery. That testimony was corroborated by treatment notes from Dr. Bartuska from that time period, which include a statement that "I see no evidence for opioid dependence."

Furthermore, the ALJ's recitation of the medical evidence fails to recognize the years of records, from at least 2003 onward, by her treating physicians relating Moore's chronic painful migraines accompanied by photophobia and nausea and vomiting. Similarly, the ALJ detailed the concerns of

emergency room physicians that she was drug-seeking, but did not recognize that the vast majority of emergency room visits in that time period reflected that she was experiencing severe migraine pain and provided treatment for that malady, without any corresponding concern of drug abuse. The ALJ repeatedly references Dr. Arnett's opinion—referring to a letter from Dr. Arnett to Dr. Robinson in which Dr. Arnett states that she had received calls from emergency rooms about Moore seeking drug treatment there since she was thought to be drug-seeking by the physicians around her—as an opinion by Dr. Arnett that Moore's emergency room visits are related to drug-seeking, not migraines. In that letter, however, after recounting those conversations, Dr. Arnett states as her "Impression" that Moore presents with migraine headaches, exacerbated by stress, and that Moore is under increased stress due to a need to care for Moore's mother who was post-surgery for cervical stenosis, and her "Recommendation" is that Moore would benefit from a university setting with multiple studies for headaches because she was inadequately treating Moore's "very severe headaches." To characterize that letter as an opinion that her emergency room visits are not related to migraine pain but drug-seeking behavior fails to acknowledge and reconcile the actual conclusions stated. Moore subsequently followed up with Dr. Daniel Hier at UIC Hospital, and the notes from that consultation reflect that Moore has weekly headaches that can include nausea, vomiting, photophobia, and sensitivity to smells and noises, and that the headaches can be precipitated by stress. Dr. Hier notes that Moore is on an aggressive regimen for her headaches and that there would be no change in the medication at that time. In an opinion

submitted to the ALJ, Dr. Hier also indicated that the implantation of the nerve stimulator did not relieve the headaches and that Moore was troubled by continuous unremitting headaches, which the ALJ did not mention in characterizing the surgery as having worked well. Finally, all of the physicians referenced by the ALJ continued to acknowledge that Moore suffered from chronic migraines, and did not discontinue medication or diagnose her with a dependency. The ALJ simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record.

We want to emphasize here that we are not suggesting that the ALJ was required to reach a certain conclusion regarding the nature of the emergency room visits, or the severity of Moore's migraines. The error here is the failure to address all of the evidence and explain the reasoning behind the decision to credit some evidence over the contrary evidence, such that we could understand the ALJ's logical bridge between the evidence and the conclusion. By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process.

We reject, however, Moore's argument that because the drug being sought was pain medication and most emergency room physicians provided it to her as treatment for migraines, that necessarily indicates that her emergency room visits were related to the migraines and not to unrelated drug dependence. That argument is flawed on a number of levels. First, it would not be at all surprising that emergency room doctors would not always recognize a request for pain medicine as related to an addiction. Such motivation is not always easily identifiable,

and factors that might aid in such a determination, such as the pattern and frequency of emergency room visits, may appear only after some time and could be manipulated by the patient's use of different emergency rooms that might camouflage those numbers. Moreover, faced with conflicting evidence, it is within the province of the ALJ to make that credibility determination. Given the nature of the impairment and the inability to objectively measure the pain associated with migraines, it is a challenge indeed to determine whether Moore's plea for drugs was related to a desire to alleviate severe migraine pain or a need to satisfy an addiction—or both. We cannot conclude as a matter of law that the visits were either related to her migraines or to some drug-seeking. It is the province of the ALJ to assess all of that evidence and reach a reasoned determination based on that evidence.

Even if the ALJ were to again find that the emergency room visits reflected drug-seeking behavior, there is an added problem here in the conclusions that the ALJ drew from that finding. If the purpose of the emergency room visits is ambiguous, the ALJ could properly conclude that those visits are not useful in establishing the severity, persistence or frequency of the migraines. But a finding that at least some of those emergency room visits may be related to drug-seeking behavior does not support a finding that her migraines impose no limitations whatsoever. First, a drug addiction problem is not inconsistent with the presence of chronic migraines—the conditions are not mutually exclusive. The emergency room visits may be of limited utility in establishing the severity and frequency of her migraines given the ambiguity of purpose, but that simply means the ALJ must look to other evidence in

the medical record for that determination. Significant medical evidence in the record independent of those emergency room visits reflects Moore's chronic severe migraines over a long period of time, and the ALJ in fact found that Moore suffered from a severe impairment of chronic recurring migraines. The ALJ, however, failed to identify any limitations that would arise from that condition.

In so holding, the ALJ disregarded Moore's testimony that her migraines are debilitating, cause her to stay in bed much of the day, render her unable to deal with light and sound, and result in a heightened sense of smell that aggravates her nausea and headaches. The ALJ held that two factors weigh against crediting that testimony: first, the limitations cannot be objectively verified with any reasonable degree of certainty; and second, even if her activities were so limited, it would be difficult to attribute that to a medical condition as opposed to other evidence in view of the relatively weak medical evidence and the other factors (presumably the drug-seeking evidence) discussed in the decision. Inexplicably, the ALJ then states: "Moreover, her migraines occur once to twice weekly now; even if they did occur at the frequency and severity attested she still has a significant amount of time during which she would not be incapacitated." The ALJ concludes that overall Moore's reported limited daily activities are "outweighed by the other factors discussed in this decision."

Once again, there are myriad problems with the ALJ's assessment of the evidence. First, the ALJ erred in rejecting Moore's testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has

established a medically determined impairment that could reasonably be expected to produce the pain. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Moore has established that she suffers from chronic migraines, which are the type of impairment that can reasonably be expected to cause pain. *Indoranto*, 374 F.3d at 474. "Further, the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence." *Id*.; *Bjornson*, 671 F.3d at 646, 648; *Carradine*, 360 F.3d at 753; *Villano*, 556 F.3d at 562; SSR 96-7p(4), www/ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html (last visited February 14, 2014) ("[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.")

That leads to the second basis for rejecting her credibility, which was that limitations on her activities could not be attributed to the migraines in light of the relatively weak medical evidence and the other factors. As we discussed earlier, this conclusion rests upon a skewed portrayal of the evidence that ignores extensive evidence of chronic debilitating migraines, including recognition of that problem by all treating physicians. Most significant in that evidence is that Moore enrolled in a migraine-specific program at UIC Hospital and underwent two surgical procedures for the treatment of migraine pain with a subcutaneous occipital nerve stimulator. Because it was designed to eliminate the pain and therefore the need for pain medication, that medical evidence is strong evidence that she was experiencing severe migraine pain and

was not simply seeking pain medication because of an addiction. See *Carradine*, 360 F.3d at 755 (noting the improbability that a claimant would undergo pain treatment procedures including heavy drugs and surgical implantation of a stimulator merely to strengthen the credibility of complaints of pain, and also the improbability that medical workers would prescribe drugs and other treatment for her if she was not experiencing those symptoms). That does not mean that the ALJ was required to credit Moore's testimony. The ALJ could properly have considered whether Moore's testimony was credible and whether the evidence supported such limitations, including assessing whether the migraines were less debilitating after the stimulator implantation. The error here is the same failure to address the evidence in a balanced manner. See *Myles*, 582 F.3d at 676.

The final statement made by the ALJ in assessing whether Moore was credible was that "her migraines occur once to twice weekly now; even if they did occur at the frequency and severity attested she still has a significant amount of time during which she would not be incapacitated." If the ALJ is thereby agreeing that Moore experiences incapacitating migraines once or twice a week, then that would require a holding that she could not perform her past work because the vocational expert testified that Moore could not perform her past work or any work if she would be absent once or twice a week, and in fact stated that she could not perform her past work if she would miss any of the training days at all. Because the ALJ's statement is unclear, however, we will not assume that meaning.

An equally troubling aspect of that statement, however, is the implication that incapacitation once or twice a week would not be problematic because a significant amount of time remains in which the claimant could work. This is an even more extreme example of a problem we have long bemoaned, in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation. See *Roddy*, 705 F.3d at 639; *Carradine*, 360 F.3d at 755–56; *Bjornson*, 671 F.3d at 647. In *Bjornson*, we noted that the critical difference between daily living activities and activities of a full-time job is that in the former the person has more flexibility in scheduling, can get help from others when needed, and is not held to a minimum standard of performance. *Id.* We concluded that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id*. Here, the ALJ appears to have concluded that incapacitating migraines once or twice a week would not be problematic because she would still have most of the week without such symptoms, but that essentially ignores the inability to schedule the incapacitating migraines. Absent a showing that she has a completely flexible work schedule in her past position as a reservation agent, the existence of symptom-free days adds nothing here. The ALJ erred in failing to account for the limitations caused by migraines occurring with that frequency.

Finally, in determining Moore's RFC, the ALJ erred in her treatment of opinion evidence by Dr. Hier, who was Moore's treating neurologist at UIC Hospital where she had a subcuta-

neous occipital nerve stimulator implanted in February 2007. Dr. Hier submitted an opinion to the ALJ indicating that Moore's headaches are refractory to medical and surgical treatment including an occipital nerve stimulator, and that "she is troubled with continuous unremitting headaches and is disabled from working." The ALJ determined that Dr. Hier's opinion as treating neurologist should be given no special significance because, in concluding that Moore was disabled from working, Dr. Hier opined on an issue reserved to the Commissioner. The ALJ found the limited rationale problematic, stating that Dr. Hier provided very little explanation of the evidence relied upon as the basis for that conclusion, citing only subjective pain, and found it inconsistent with the opinions of other treating sources including Dr. Arnett and the emergency room physicians. That dismissive approach to the treating neurologist's opinion was improper because the medical records submitted by all of Moore's treating physicians including Dr. Arnett also indicated that she suffered from chronic migraines, and Dr. Hier's statement that she experienced "continuous unremitting headaches" was not an opinion on a matter reserved to the Commissioner. In addition, Moore herself testified as to the limitations imposed by the migraines, and her mother with whom she lived testified as to that impact as well. The ALJ also erred in dismissing Dr. Hier's opinion because it was based on Moore's subjective pain. As the ALJ acknowledged, Moore suffered from a severe impairment of chronic migraines, and the patient's pain level is a relevant consideration in determining the effectiveness of the treatment. The ALJ's disregard for Moore's allegations of pain is particularly inappropriate in the context of treatment by Dr. Hier,

given that the nerve stimulator implanted at UIC Hospital was an effort to provide pain management not based on drugs, and therefore did not implicate the concern with exaggeration for drug-seeking purposes. See *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (regulations require that the ALJ give the opinions of a treating physician controlling weight as long as they are supported by medical findings and consistent with substantial evidence in the record); *Scott*, 647 F.3d at 739 ("[a]n ALJ must offer 'good reasons' for discounting the opinion of a treating physician"); *Young*, 362 F.3d at 1002. If the ALJ was unable to discern the basis for the treating physician's determination, then the proper course would have been to solicit additional information from Dr. Hier. See *Simila*, 573 F.3d at 516–17 (ALJ has a duty to solicit additional information where the medical support is not readily discernible); *Scott*, 647 F.3d at 741.

In conclusion, significant medical and testimonial evidence independent of the questionable emergency room visits established a history of severe recurrent migraines. In light of that evidence, the ALJ erred in disregarding the migraines as a factor in determining Moore's ability to perform her past work. Specifically, the ALJ should have at least included in the RFC determination the likelihood of missing work. The ALJ's decision did not reflect any likelihood of absences or breaks at work related to migraines, and that is simply unsupported by the record. As to the limitations imposed by that severe impairment, the ALJ recognized in the RFC only that she should be limited to sedentary work in which she could avoid concentrated exposure to extreme cold, extreme heat, noise, fumes, odors, dusts, gases, poor ventilation, hazardous

machinery and heights. The ALJ never related those specific limitations to certain impairments. It is possible to postulate which were related to migraines as opposed to the other severe or non-severe impairments such as obesity, asthma and rheumatoid arthritis, but the reviewing court should not have to speculate as to the basis for the RFC limitations. Nor is the basis otherwise apparent in the record. Accordingly, the case must be remanded for the ALJ to articulate with clarity the limitations related to the impairments based on an examination of the evidence in the record as a whole, and to present those limitations to the vocational expert to determine whether Moore is capable of performing her past relevant work. For these reasons, we REVERSE the district court and REMAND this case to the agency for further proceedings.