In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1442
GEORGANN KATHLEEN SEVEC,
 Plaintiff-Appellant,
 v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:19-cv-07278 — Young B. Kim, Magistrate Judge.
 ____________________

 ARGUED OCTOBER 27, 2022 — DECIDED FEBRUARY 1, 2023
 ____________________

 Before EASTERBROOK, RIPPLE and WOOD, Circuit Judges.
 RIPPLE, Circuit Judge. Georgann Kathleen Sevec filed for
disability and social security benefits in December 2017 and
February 2018, respectively, alleging an onset of disability of
May 1, 2014. Her application was denied initially and upon
reconsideration. An administrative law judge (“ALJ”) con-
ducted a hearing, at which Ms. Sevec and a vocational expert
(“VE”) testified. Relying on the VE’s testimony that Ms. Sevec
2 No. 22-1442

was able to perform the job of home health nurse in the man-
ner in which she had performed it in the past, the ALJ deter-
mined that Ms. Sevec was not disabled. The Appeals Council
denied review. When Ms. Sevec sought further review in the
district court, it concluded that substantial evidence sup-
ported the ALJ’s determination.
 We now reverse. Although generally an ALJ may rely on
the testimony of a VE, here the VE’s testimony is not well
grounded in the record, and it is not sufficient, standing alone,
to support the ALJ’s determination. For this reason, we re-
verse the district court’s judgment and remand for further
proceedings.
 I.
 BACKGROUND
 At the time of her hearing before the ALJ, Ms. Sevec was
sixty years old and suffered from knee pain caused by osteo-
arthritis. She testified as to the extent of her physical limita-
tions as well as her past work experience. Because our deci-
sion turns in large part on the record evidence and the testi-
mony at the administrative hearing, we recount it here in
some detail.
 A.
 In her application for unemployment benefits, Ms. Sevec
stated that she was employed as a “registered nurse” at Pro
 1
Med Staffing from 1999 to 2009. At the hearing, she further

1 A.R. 243.
No. 22-1442 3

testified that she was “basically” working in “nursing
 2
homes.” Her duties included: “[D]o[ing] a narcotics count”;
 [a]nswering call lights[;] [a]ssisting patients to
 and from the bathroom, if needed[;] [t]ak[ing]
 care of the IV meds[;] [d]o[ing] some breathing
 treatments as well as tak[ing] care of any kind
 of feeding tubes[;] [g]enerally lifting – …
 10 pounds or less, but … of course, occasionally
 … hav[ing] to lift the patients if they fell on the
 3
 floor.
These duties matched those Ms. Sevec described in her appli-
cation for disability benefits.
 She later worked at ATC Healthcare Services, Inc. (“ATC
 4
Healthcare”) from 2009 to 2014, also as a “registered nurse.”
In her application for benefits, she described her duties as be-
ing very similar to those at Pro Med Staffing; they included
doing narcotics counts; answering call lights and bed alarms;
assisting patients to the bathroom; administering IV medica-
tions; doing breathing treatments; and taking care of feeding
tubes.
 At the hearing, the ALJ inquired about her duties at both
facilities. Beginning with Pro Med Staffing, Ms. Sevec stated
that she did a narcotics count, answered call lights, assisted
patients to the bathroom, took care of IV medications, and so
forth. The ALJ then asked her about her work at ATC

2 Id. at 38.

3 Id. at 38–39.

4 Id. at 243.
4 No. 22-1442

Healthcare. She described ATC Healthcare as “a staffing
agency” that “went to long-term care facilities … for the de-
velopmentally disabled,” some of which “were located in
 5
houses.” Work at these homes involved “total care” of the
 6
residents. When asked to clarify whether her duties at the
“developmental homes” were the same as those she previ-
ously had described, she stated that “there was a lot more sei-
 7
zure medications to be given. Things of that nature.” She did
not state that there were any further distinctions in her re-
sponsibilities. At that point, the ALJ advised Ms. Sevec’s
counsel and the VE that “[t]hese two jobs”—at Pro Med Staff-
ing and ATC Healthcare—“would both be considered past
work. The job with the neighbor is not past work, so I don’t
 8
need that described.”
 Ms. Sevec then testified that she left her job at ATC
Healthcare to care for her neighbor because she had “diffi-
 9
culty being on [her] legs that long, passing the medicine.”
She thought that “caring for one person would be better than
 10
trying to take care of 42.”

5 Id. at 39.

6 Id. at 40.

7 Id.

8 Id.

9 Id. at 41.

10 Id.
No. 22-1442 5

 After Ms. Sevec, the VE testified that he had “had a chance
 11
to review the evidence and listen to the testimony.” Based
on the evidence, the VE stated, Ms. Sevec had past work as a
“registered nurse at 075.364-010. And that’s skilled work.
That’s level 7, medium in its physical demand, medium as
 12
performed. And then we also have home health nurse.” The
ALJ interrupted and inquired whether the VE was referring
 13
to the work “for the neighbor.” The VE responded: “I
thought there was also, she also had some home health as-
signments when she was with the nursing home or something
 14
like that.”
 At this point, Ms. Sevec interjected that her work had been
 15
in homes for “people who are developmentally disabled.”
The ALJ then followed up to determine how frequently
Ms. Sevec was assigned to homes for the developmentally
disabled, as opposed to other care facilities. She stated that
she could not remember “in a typical month or a typical year”
how frequently she would go “to a developmental home ver-
 16
sus a nursing home.” However, she stated that it happened
“very regular[ly]” because ATC Healthcare serviced two such

11 Id. at 52.

12 Id. at 53.

13 Id.

14 Id.

15 Id.

16 Id. at 54.
6 No. 22-1442

 17
homes. After this exchange, the VE declared, without elabo-
ration: “A home health nurse is 079.374-014. That’s a skilled
job also, level 6. Medium in its physical demand; light as per-
 18
formed.”
 The ALJ then posed a hypothetical question to the VE in
which she incorporated all of Ms. Sevec’s limitations and
 19
asked whether “any of the past work [would] be available?”
The VE replied, “Possibly the home health being as per-
formed at a light level, not per the [Dictionary of Occupational
 20
Titles], though, but as performed.” Ms. Sevec’s counsel fol-
lowed up with a few questions for the VE about “absenteeism
and [being] off task”; however, counsel did not pose any
questions to the VE regarding his conclusion that Ms. Sevec
 21
had past work as a home health nurse.
 B.
 In a written opinion, the ALJ concluded that Ms. Sevec
was not disabled. The ALJ engaged in the required five-step
process described in 20 C.F.R. § 404.1520(a)(4) in reaching her
determination. At step one, the ALJ concluded that Ms. Sevec
was not currently engaged in substantial gainful employ-
ment. At step two, the ALJ determined that Ms. Sevec had two
severe impairments: osteoarthritis of her knees and obesity.

17 Id.

18 Id.

19 Id. at 55.

20 Id.

21 Id. at 56.
No. 22-1442 7

At step three, the ALJ concluded that Ms. Sevec’s impair-
ment(s) did not meet the requirements for any of the specific
disability listings. At step four, the ALJ found that, even con-
sidering Ms. Sevec’s limitations, she was capable of perform-
ing past relevant work as a home health nurse. According to
the ALJ, “[t]his work does not require the performance of
work-related activities precluded by the claimant’s residual
 22
functional capacity.” Specifically, the ALJ stated:
 The record reflects the claimant worked as a
 home health nurse from 2009 to 2014 (Hearing
 Testimony & Exhibit 3E). Her earnings records
 indicated that she worked at or above substan-
 tial gainful activity during the time (Exhibit 8D).
 The vocational expert testified and defined the
 job of home health nurse as a medium, skilled
 job with a specific vocational preparation (SVP)
 of six, meaning it takes anywhere from one to
 two years to learn. The vocational expert testi-
 fied that the claimant performed the job of home
 health nurse at the light exertional level. I find
 that the claimant worked at substantial gainful
 activity and worked as a home health nurse for
 a sufficient amount of time to learn the skills to
 return to this job. Therefore, I find that the
 claimant’s past work as a home health nurse
 qualifies as past relevant work.
 In comparing the claimant’s residual functional
 capacity with the physical and mental demands
 of a home health nurse, I find the claimant is

22 Id. at 22–23 (emphasis removed).
8 No. 22-1442

 able to perform this work as actually per-
 formed. At the hearing, the vocational expert
 testified that the claimant, subject to the limita-
 tions identified in the residual functional capac-
 ity finding, could perform the past relevant
 work as a home health nurse as actually per-
 formed. Pursuant to SSR 00-4p, the vocational
 expert’s testimony is consistent with the infor-
 mation contained in the Dictionary of Occupa-
 23
 tional Titles.
Because the ALJ found that Ms. Sevec could perform past
work, she did not proceed to step five of the analysis
(whether, given her limitations, there are jobs in the national
economy that Ms. Sevec could perform).
 C.
 Ms. Sevec filed this action in district court challenging the
ALJ’s determination. The district court, however, held that
the ALJ’s conclusion was supported by substantial evidence.
The district court first noted that “past work” did not depend
on the title of the position that the individual had, but instead
on “the mental and physical responsibilities associated with
 24
that work.” The district court further observed that “the VE
provided objective and impartial testimony” that Ms. Sevec
had past work as a home health nurse:
 [T]he VE considered Georgann’s own testimony
 that during her employment with a nurse

23 Id. at 23.

24 R.42 at 10.
No. 22-1442 9

 staffing agency from 2009 to 2014, she worked
 in developmental homes “quite a few times”
 and “very regular[ly].” The ALJ relied on the
 VE’s characterization in determining that Geor-
 gann’s past work included home health nurse
 from 2009 to 2014. The court finds no error in
 25
 the ALJ’s factual statement.
 II.
 We review de novo the district court’s judgment affirming
the agency’s decision but apply the deferential “substantial
evidence” standard when reviewing the ALJ’s decision. See,
e.g., Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007). “[S]ub-
stantial evidence … is ‘such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion.’”
Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009) (quoting Craft
v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008)). “[W]hatever the
meaning of ‘substantial’ in other contexts,” the Supreme
Court has made clear that in the disability context, “the
threshold for such evidentiary sufficiency is not high.” Biestek
v. Berryhill, 139 S. Ct. 1148, 1154 (2019).
 In determining whether a claimant is disabled, the ALJ
must undertake a five-step process. “If at any step a finding
of disability or nondisability can be made, the [Social Security
Administration] will not review the claim further.” Barnhart
v. Thomas, 540 U.S. 20, 24 (2003). The Supreme Court has set
forth these steps accordingly:

25 Id. (citations omitted).
10 No. 22-1442

 At the first step, the agency will find nondisabil-
 ity unless the claimant shows that he is not
 working at a “substantial gainful activity.”
 §§ 404.1520(b), 416.920(b). At step two, the SSA
 will find nondisability unless the claimant
 shows that he has a “severe impairment,” de-
 fined as “any impairment or combination of im-
 pairments which significantly limits [the claim-
 ant’s] physical or mental ability to do basic
 work activities.” §§ 404.1520(c), 416.920(c). At
 step three, the agency determines whether the
 impairment which enabled the claimant to sur-
 vive step two is on the list of impairments pre-
 sumed severe enough to render one disabled; if
 so, the claimant qualifies. §§ 404.1520(d),
 416.920(d). If the claimant’s impairment is not
 on the list, the inquiry proceeds to step four, at
 which the SSA assesses whether the claimant
 can do his previous work; unless he shows that
 he cannot, he is determined not to be disabled.
 If the claimant survives the fourth stage, the
 fifth, and final, step requires the SSA to consider
 so-called “vocational factors” (the claimant’s
 age, education, and past work experience), and
 to determine whether the claimant is capable of
 performing other jobs existing in significant
 numbers in the national economy.
 §§ 404.1520(f), 404.1560(c), 416.920(f),
 416.960(c).
Id. at 24–25 (footnotes omitted).
No. 22-1442 11

 Ms. Sevec’s arguments center around step four of the anal-
ysis. She claims that the ALJ’s conclusion that she could per-
form past work as a home health nurse is not supported by
substantial evidence. We agree. The ALJ reached her conclu-
sion solely on the basis of the VE’s testimony. But a review of
the record convinces us that it simply will not support the
VE’s conclusion as to the nature of Ms. Sevec’s past work.
 A.
 Our first concern stems from the quality of the VE’s testi-
mony, which forms the basis for the ALJ’s ultimate decision.
There is reason to question whether, in forming his opinions,
the VE actually had reviewed the record and had paid atten-
tion to the testimony. Specifically, although the ALJ had in-
structed the VE not to consider Ms. Sevec’s work for her
neighbor as past work, the VE seemed somewhat pressed to
come up with other evidence that Ms. Sevec ever had worked
as a home health nurse; he stated that he “thought” that
Ms. Sevec “also had some home health assignments when she
 26
was with the nursing home or something like that.”
 Following the ALJ’s inquiries concerning how frequently
Ms. Sevec was assigned to homes for the developmentally
disabled, the VE reiterated: “A home health nurse is 079.374-
014. That’s a skilled job also, level 6. Medium in its physical
 27
demand; light as performed.” However, given that
Ms. Sevec’s duties when working for ATC Healthcare were so
similar to those she performed while at Pro Med Staffing, it is
difficult to see how caring for patients in two homes, among

26 A.R. 53 (emphasis added).

27 Id. at 54.
12 No. 22-1442

her other assignments, transformed her job from a general
 28
duty nurse to that of a home health nurse. The only differ-
ence that Ms. Sevec noted between her responsibilities at the
other long-term care facilities and the group homes was that
“a lot more seizure medications [were] given. Things of that
 29
nature.” The DOT listings referenced by the VE make no
mention of the administration of specific drugs. See DOT
075.364-010 (Nurse, General Duty); DOT 079.374-014 (Nurse,
Licensed Practical). Additionally, absent from Ms. Sevec’s tes-
timony is any evidence from which the VE could conclude
that Ms. Sevec’s duties were “light as performed.” Indeed,
DOT 079.374-014 is designated as requiring a medium level of
 30
exertion.

28 “Registered Nurses” is actually a category of DOT listings (075-Regis-
tered Nurses). When the VE testified that Ms. Sevec had past work as a
“registered nurse,” he referenced a specific listing within that category:
DOT 075.364-010 (Nurse, General Duty).
29 A.R. 40.

30 The Acting Commissioner maintains that “[t]he vocational expert’s tes-
timony—and, in turn, the ALJ’s finding—was firmly supported by Sevec’s
own testimony.” Appellee’s Br. 16. According to the Acting Commis-
sioner, Ms. Sevec “testified that her duties at the developmental homes
involved more dispensing of medications and ‘[t]hings of that nature’ than
at the nursing homes and did not require her to bring or carry any equip-
ment.” Id. However, Ms. Sevec did not testify that her work at the group
homes involved “more dispensing of medications” generally but stated
that “there was more seizure medications to be given. Things of that na-
ture.” A.R. 40. Ms. Sevec’s testimony described the particular medicinal
needs of the patients, not a qualitative difference in the type of care being
administered. The Acting Commissioner also states that Ms. Sevec’s work
at the group homes “did not require her to bring or carry any equipment.”
Appellee’s Br. 16. However, there is no evidence in the record that
No. 22-1442 13

 Finally, when asked to assess whether, given Ms. Sevec’s
physical limitations, any of her “past work would be availa-
ble,” the VE was equivocal at best: “Possibly the home health
being as performed at a light level, not per the DOT, though, but
 31
as performed.” The VE offered no further testimony that so-
lidified his opinion; his opinion remained that Ms. Sevec only
could “possibly” perform her past work.
 In sum, the ALJ’s decision that Ms. Sevec could perform
past “light” work as a “home health nurse” rested entirely on
the vague, ill-explained, and equivocal testimony of the VE.
This is too thin an evidentiary reed on which to base a disa-
bility determination; it certainly is not such evidence that “a
reasonable mind might accept as adequate to support a

Ms. Sevec was required to bring her own equipment with any of her as-
signments—nursing home, other long-term care facility, or group home.
Additionally, there is no evidence in the record that Ms. Sevec was not
required to carry equipment while at the group homes. Rather the question
and answer on which the Acting Commissioner relies for this conclusion
only addresses what Ms. Sevec was required to bring with her to particu-
lar job sites:
 Q Would you have to, like, bring your own equip-
 ment and things like that with you and drive there, or
 how did that work?
 A Well, they would give you directions to whatever
 house it was, and I would drive there but no, they pretty
 much had their own medications. Everybody had their
 own medications.
A.R. 40.
31 Id. at 55 (emphasis added).
14 No. 22-1442

conclusion.” Simila, 573 F.3d at 513 (internal quotation marks
 32
omitted).
 B.
 The ALJ’s opinion also fails to adhere to the standards in
Social Security Ruling 82-62, which sets forth “the policy and
explain[s] the procedures for determining a disability claim-
ant’s capacity to do past relevant work (PRW).” It notes that
the determination of whether the claimant can perform past
work “has far-reaching implications and must be developed
and explained fully in the disability decision. Since this is an
important and, in some instances, a controlling issue, every
effort must be made to secure evidence that resolves the issue
as clearly and explicitly as circumstances permit.” Id. With re-
spect to the ALJ’s explanation, the Ruling further states that
“[t]he explanation of the decision must describe the weight
attributed to pertinent medical and nonmedical factors in the
case and reconcile any significant inconsistencies. Reasonable
inferences may be drawn, but presumptions, speculations
and suppositions must not be used.” Id.

32 The Acting Commissioner notes that Ms. Sevec’s counsel failed to cross-
examine the VE during the hearing, and, therefore, she cannot now com-
plain that the VE’s testimony is insufficient to support the ALJ’s disability
determination. See Appellee’s Br. 15. Ms. Sevec’s counsel certainly could
have taken a more active role in dismantling the VE’s testimony. This is
especially true with respect to the VE’s conclusion that the home health
care work was “light” as performed. However, as noted above, the VE
could not testify, with any degree of certainty, that Ms. Sevec could per-
form her past work as a home health nurse. Counsel may have concluded,
as we have, that such a statement could not support an adverse disability
determination.
No. 22-1442 15

 Here, as we already have described, the evidence on
which the ALJ relied does not allow for a “clear[] and ex-
plicit[]” comparison of Ms. Sevec’s current limitations to the
duties of her prior employment. Rather, it rests wholly on the
terse, breezy conclusions of the VE. Put bluntly, the ALJ’s con-
clusion that Ms. Sevec is capable of performing past work as
a home health nurse impermissibly relies on “presumptions,
speculations and suppositions.” SSR 82-62. The ALJ notes
that, “[a]t the hearing, the vocational expert testified that the
claimant, subject to the limitations identified in the residual
functional capacity finding, could perform the past relevant
 33
work as a home health nurse as actually performed.” Not so.
The VE did not testify that the claimant “could perform …
past relevant work”; rather the VE testified that Ms. Sevec
could “[p]ossibly” perform “the home health being as per-
 34
formed at a light level.” The ALJ’s determination adds a
gloss of certainty to the VE’s testimony that the record does
support. The ALJ’s disability determination rests only on the
possibility that Ms. Sevec can perform past work. This simply
is not sufficient.
 Because the record does not contain evidence from which
the ALJ could determine, with any degree of confidence, that
Ms. Sevec is capable of performing her past work, we must
conclude that the ALJ’s finding was not supported by sub-
 35
stantial evidence.

33 A.R. 23.

34 Id. at 55 (emphasis added).

35 We acknowledge that the burden of proof rests on the claimant to es-
tablish that she is not capable of performing her past work. See, e.g., Moore
16 No. 22-1442

 Conclusion
 For the foregoing reasons, the judgment of the district
court is reversed, and the case is remanded for proceedings
consistent with this opinion.
 REVERSED and REMANDED

v. Colvin, 743 F.3d 1118, 1121 (7th Cir. 2014) (noting that, at step four, “the
claimant has the burden to demonstrate whether she is capable of per-
forming her past relevant work”); Bowen v. Yuckert, 482 U.S. 137, 146 n.5
(1987) (“The claimant first must bear the burden at step one of showing
that he is not working, at step two that he has a medically severe impair-
ment or combination of impairments, and at step four that the impairment
prevents him from performing his past work.”). Here, however, the VE’s
testimony is both the only support for the ALJ’s decision and is substan-
tively inadequate. Consequently, the ALJ’s decision is without any sup-
port in the record.